[File No. 6828.]

NORTHWESTERN MUTUAL SAVINGS AND LOAN ASSO-
CIATION, a Corporation, Respondent, v. IRVINE V. HAN-
SON and Theo. Hamm Brewing Company, a Corporation, Appel-
lants.

(10 NW(2d) 599)

630

Opinion filed July 30, 1943.

*Edgar P. Maltson* (*Bundlie, Kelley & Finley* of counsel), for appellant.

*Shure & Shure,* for respondent.

MORRIS, Ch. J.    This is an action to quiet title to a lot in the city of New Rockford in Eddy county.    Prior to April 15, 1937, the plaintiff had acquired title to the lot through foreclosure proceedings that resulted in a sheriff's certificate of sale being issued and recorded December 26, 1935.    The sheriff's deed was issued to the plaintiff on December 31, 1936, and recorded December 18, 1940.

On April 15, 1937, the plaintiff as vendor entered into a contract for deed with Irvine V. Hanson and Joseph J. Greenheck as vendees for the sale and purchase of the lot for $1,500 payable in monthly instalments of $25 each.    This contract contained this provision:    Said parties of the second part further covenant and agree as follows:    to pay before penalty attaches thereto, all taxes due and payable in the year 1936, and in subsequent years, and all special assessments heretofore or hereafter levied, and in addition thereto all delinquent taxes. It was recorded in the office of the Register of Deeds of Eddy county, October 29, 1937.

On May 24, 1939, Hanson and Greenheck entered into an agreement for the dissolution of their partnership whereby it was provided that the contract be transferred to Hanson who remained in possession of the premises.    This agreement was recorded January 12, 1940.    At Hanson's request a new contract for deed was made with the plaintiff

wherein the vendee agreed to pay $1,000 for the premises. This contract contained the identical covenant regarding taxes that appeared in the first contract and which we have quoted above. It was not recorded.

Hanson failed to pay the taxes assessed against the premises which were sold at a tax sale and bid in by Eddy county. No redemption was made. A tax deed was issued to the county on October 2, 1940, for a consideration of $1,591.77. On November 19, 1940, the county issued a tax deed to Rochus Sander for $1,400. On December 11, 1940, Rochus Sander and his wife executed a quitclaim deed to Hanson for a named consideration of $1. The actual consideration was $1,700.

On December 11, 1940, Hanson and his wife executed a mortgage to the defendant Theo. Hamm Brewing Company for $1,600, which was recorded December 17, 1940. The proceeds of this mortgage was applied by Hanson on the purchase price paid to Rochus Sander.

The trial court ordered judgment quieting title in the plaintiff except as to the rights acquired by Irvine v. Hanson under his contract for deed with the plaintiff, and limited the rights of the defendant Theo. Hamm Brewing Company to the interest of the defendant Hanson in the property in question. Both defendants appeal from this judgment and demand a trial de novo.

The vendor contends that Hanson is estopped from acquiring a tax title adverse to the vendor because of the covenant in the contract obligating the vendee to pay the taxes on the premises. It is argued that the title acquired from Sander inures to the benefit of the vendor and amounts merely to a redemption from the tax sale.

The defendants on the other hand contend that the issuance of the tax deed to Eddy county and the subsequent sale by the county to Rochus Sander created a new, distinct, and separate title in the purchaser and deprived any former owner of all title, lien or interest in the property whatsoever.

The basis for this contention is to be found in decisions of this court to the effect that a valid tax deed clothes the grantee with a new and complete title under an independent grant from the sovereign authority of the state. Baird v. Stubbins, 58 ND 351, 226 NW 529, 65 ALR

1009; Peterson v. Reishus, 66 ND 436, 266 NW 417, 105 ALR 724; Nelson v. Murton, 68 ND 108, 277 NW 390. The principle of law stated by these decisions does not preclude the application of equitable principles or prevent the doctrine of estoppel from operating. This is an action to determine adverse claims to real property brought under the provisions of §§ 8144 et seq. ND Compiled Laws 1913. It is essentially an action in equity. Wagner v. Stroth, 70 ND 323, 294 NW 195; Axt v. Bank of America, ante, 600, 10 NW(2d) 430.

In this case the vendee failed to perform his covenant to pay taxes. As a result of his breach of covenant the property was sold at tax sale. A tax deed was eventually issued that created a new and paramount title adverse to that of the vendor. The vendee then purchased this title which had its inception in the vendee's default and breach of covenant. In an early and leading case, the supreme court of California set forth the law applicable to this situation in the following language: "If the defendant was under any legal or moral obligation to pay the taxes, he could not, by neglecting to pay the same and allowing the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased at the sale. Otherwise, he would be allowed to gain an advantage from his own fraud or negligence in failing to pay the taxes. This the law does not permit, either directly or indirectly." Moss v. Shear, 25 Cal 38, 85 Am Dec 94. That case has been followed in numerous California decisions including Barnard v. Wilson, 74 Cal 512, 16 P 307; Christy v. Fischer, 58 Cal 256; Reily v. Lancaster, 39 Cal 354; Coppinger v. Rice, 33 Cal 408, and Garvey v. Byram, 18 Cal (2d) 261, 115 P (2d) 501, 136 ALR 1137.

Finch v. Noble, 49 Wash 578, 96 P 3, 126 Am St Rep 880, is directly in point. In that case the vendees were obligated by the contract of purchase to pay the taxes on the premises. This they failed to do. The county foreclosed its tax lien. The property was purchased at tax sale by one Mitchell who received a tax deed. Some six months later, the vendees purchased from Mitchell and received a quitclaim deed. The vendees contended that although they could not become purchasers at the tax sale or acquire a tax title by collusion with others, they nevertheless could purchase the tax title from a stranger. In re-

jecting this contention and after citing Moss v. Shear, supra, and other cases the court said: "In each of these cases the tax title came through a third person, without collusion, but the court deemed that fact utterly immaterial. The fact that the party in possession, and claiming under the tax title, was seeking to take advantage of a title which was made possible by his own breach of covenant and default was deemed fatal to his claim." See also, Tyler v. Burgeson, 229 Mich 268, 201 NW 185; note, 40 ALR 1085.

The situation under consideration is analogous to that involving an after-acquired title obtained by a mortgagor. In Roby v. Bismarck Nat. Bank, 4 ND 156, 59 NW 719, 50 Am St Rep 633 this court said: "Where a sale of land is evidenced by a contract only, and the purchase price has not been paid, and the vendor retains the legal title, the parties occupy substantially the position of mortgagor and mortgagee. The vendor has a lien for his purchase money by virtue of his contract." See also, D. S. B. Johnston Land Co. v. Whipple, 60 ND 334, 234 NW 59.

In Adam v. McClintock, 21 ND 483, 131 NW 394, this court held that where a party occupied a tract of land under a homestead entry and gave a mortgage thereon, the title later acquired by patent inures to the mortgagee as of the date of the execution and delivery of the mortgage. The mortgage contained the usual covenants of title, ownership, right of possession, quiet enjoyment, right to convey, and against encumbrances. The decision was based upon two grounds: (1) The statute (ND Comp. Laws 1913 § 6731) provides that a title acquired by a mortgagor subsequent to the issuance of a mortgage inures to the mortgagee and (2) that in equity the mortgagor could not be heard to deny the recitals and covenants in the mortgage to defeat the object for which it was given. On the latter point the court said: "Such covenants, in the absence of the statute, would have caused the after-acquired title to have inured by estoppel to the benefit of the mortgagee. In the first instance, then, the statute in legal effect casts the encumbrance back to the date of its execution, to be enforced in all particulars as valid from that date; and, in the second instance, plaintiff is barred by estoppel from asserting the invalidity of the mortgage through her lack of title, contrary to the covenants of her mortgage

contract: Whether she acquired the title for the benefit of the mortgagee under his mortgage, or, instead, acquired the title with the purpose of defeating the mortgage, as she has evidently done in this case, is immaterial, as equity conclusively presumes she completed the title for the benefit of the mortgagee."

In the case at bar the vendee failed to pay the taxes which he had agreed to pay. The direct result of this omission was the sale of the premises for taxes and the ultimate issuance of a tax deed to Eddy county. The county in turn issued a tax deed to Rochus Sander under the provisions of chapter 235, Session Laws ND 1939, which vested a paramount title in him. The vendee then acquired this title. To permit the vendee to thus take advantage of his own dereliction to the detriment of the vendor would contravene sound principles of equity. The title that had its inception in the vendee's breach of covenant inures to the benefit of the vendor.

The remaining question to be determined deals with the status of the mortgage given by Hanson to the Theo. Hamm Brewing Company. The answer of this defendant pleads that it is an innocent mortgagee and that at the time it took its mortgage, the records in the office of the Register of Deeds of Eddy county disclosed full and good title in fee simple in Irvine v. Hanson.

The status of the mortgage in question depends upon notice. It can scarcely be argued that if the Theo. Hamm Brewing Company had actual knowledge of all the facts which we have held to estop Hanson from asserting title against the plaintiff, the Brewing Company would be in any better position than Hanson the mortgagor. Burrow v. Carley, 210 Cal 95, 290 P 577; Keyes v. Baird, 88 NH 449, 190 A 707; Moran v. Burmeister, 211 Wis 669, 247 NW 873.

The Brewing Company was dealing with Hanson with respect to real property, and was chargeable with notice of properly recorded instruments affecting the title thereto. Sections 5546 and 5597 ND Comp Laws 1913. The records in the office of the Register of Deeds showed that the plaintiff had foreclosed a mortgage on the premises, that a certificate of sale had been issued to the plaintiff, and that the year of redemption had long since expired. The record further showed that the plaintiff had sold the premises to Irvine V. Hanson and Joseph

J. Greenheck on a contract for deed, and that the vendees had dissolved partnership and the contract was transferred to Hanson. There was nothing of record to indicate that the contract had ever been canceled or satisfied. It is true that subsequently a new contract was made which was unrecorded and concerning which the Brewing Company had no actual notice. The record however is such as to charge the Brewing Company at least with the duty of making inquiry regarding the rights of the plaintiff.

Section 7290, Comp Laws ND 1913, provides that: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself." Newell v. McMurray, 51 ND 901, 201 NW 845.

The evidence shows that on December 11, 1940, a representative of the Brewing Company was present in New Rockford, and made arrangements for financing the purchase by Hanson from Sander. Within two or three days thereafter, a representative of the Brewing Company appeared at the office of the plaintiff in Fargo with an abstract of title to the premises in question and sought to obtain from the plaintiff a quitclaim deed to the property, which the plaintiff declined to give. In view of the instruments on record in the office of the Register of Deeds and the other circumstances surrounding the transaction in which Hanson purchased Sander's title, it appears that the Theo. Hamm Brewing Company is not an innocent mortgagee but is chargeable with notice of the facts that estopped Hanson from asserting the title acquired from Sander. The Brewing Company is likewise estopped from asserting that its mortgage is superior to the rights of the vendor. Comstock v. Robertson, 72 Kan 465, 83 P 1104; Jefferson County Bank v. Erickson, 188 Minn 354, 247 NW 245; 31 CJS 401. The trial court was correct in determining that the mortgage is subsequent to the rights of the plaintiff in the property and is a lien thereon only upon the interest of Hanson therein.

Affirmed.

CHRISTIANSON, BURR, NUESSLE, and BURKE, JJ., concur.