In re Duane S. FLUGE and Pamela J. Fluge, Debtors.

UNITED STATES of America, Plaintiff,

v.

Michael J. FARRELL,
Trustee, Defendant.

Bankruptcy No. 84–05527.
Adv. No. 85–7046.

United States Bankruptcy Court,
D. North Dakota.

Dec. 2, 1985.

Norman Anderson, Fargo, N.D., for U.S., plaintiff.

Lowell P. Bottrell, Fargo, N.D., trustee, defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

On April 22, 1985, the United States of America, on behalf of the Farmers Home Administration, filed a Complaint for Turnover of Cash Collateral comprised of rental proceeds from the 1985 lease year, derived from farmland in which FmHA alleges it holds a security interest superior to the Trustee's interest. The Trustee, Michael J. Farrell, denies that FmHA has a superior security interest in the rental proceeds contending that they constitute property of the estate. At opening of trial held on October 3, 1985 the parties agreed the case could be submitted on stipulated facts plus documentary evidence received. From the parties joint stipulation of facts and evidence received at trial the facts as material are as follows:

### FINDINGS OF FACT

The Debtors, filed for relief under Chapter 7 of the Bankruptcy Code on October 12, 1984 and at the time were the owners of farmland previously mortgaged to FmHA. As a consequence of their Chapter 7 filing the farmland became an asset of

the estate and on February 18, 1985 the Trustee filed with the Bankruptcy Court a notice of his intention to lease the subject property described as:

The east One-half of Southeast One-quarter (E½SE¼) of Section 14, Twp. 159 N, R 66 W; and the South one-half (S½) of Section 13; Twp. 159 N, R 66 W; and the Northeast One-quarter (NE¼) of Section 24, Twp. 159 N, R 66 W. of Towner County, North Dakota.

to Fred Price for the 1985 season, terminating on December 31, 1985. Price had, prior to the bankruptcy, leased the same tracts from the Debtors for the 1984 season. The United States of America through the FmHA interposed an objection to the proposed lease asserting a claim to all rents derived from the lease by virtue of an Assignment of Rents contained within its mortgage. A hearing on the Trustee's motion scheduled for April 16, 1985 was indefinitely continued with the parties agreeing it to be in everyone's best interests for the land to be farmed in 1985. Pursuant to said stipulation the rents derived from the Price lease were placed in escrow until resolution of the rent dispute. The instant adversary action followed.

FmHA's claim originates in a series of six loans totalling $321,565.08 secured by a real estate mortgage dated May 14, 1981 covering the land now under lease by the Trustee and which is in issue here. The mortgage is a standard FmHA Form 427–1ND and provides as security for the loans the borrower, in part, "hereby ... assigns [the described tract] together with ... the rents, issues and profits thereof and revenues and income therefrom ... and all payments at any time owing to Borrower by virtue of any ... lease ... of any part thereof or interest therein ..."

Paragraph (17) of the mortgage affords the FmHA a number of remedies upon default including "(e) enforce any and all other rights and remedies provided herein or by present or future law".

In April 1984 the Debtors, with the approval of FmHA leased the subject tract to Price under a crop share arrangement terminating April 15, 1985. This lease was prepared on a standard FmHA document provided to the Debtors and Price by FmHA. The FmHA on April 25, 1984 by execution of an "Application for Partial Release, Subordination or Consent" form consented to the crop share lease to Price. This document did not operate as a subordination or partial release of FmHA's security.

FmHA approved the 1984 lease to Price with the specific provision that $3,290.00 of the lease proceeds be applied to the Debtors loan with FmHA. FmHA extended an operating loan to Price for the 1984 season and a portion of the subject tract was enrolled in various government programs with the Debtor and Price sharing in the payments according to the lease terms.

Since January 1982 the Debtors have been in default on all loans. FmHA has not initiated foreclosure proceedings against the Debtors but in August 1984 did send them a pre-termination notice indicating its intention to take one or more actions, due to the default, including acceleration of the debt and foreclosure. FmHA has never sent a demand letter to the Debtors for surrender of the 1984 rents nor has it ever asked for an accounting in consequence of rents received. Neither has FmHA requested the appointment of a state court receiver prior to the bankruptcy petition nor has it, during the course of the bankruptcy, sought relief from stay.

## CONCLUSIONS OF LAW

This issue presented is the nature of a mortgagee's interest in rents under state law, when that interest is perfected and the effect of the Bankruptcy Code upon that interest.

1.

Section 552(b) of the Bankruptcy Code provides that when a security agreement is entered into prior to commencement of the case, and the security interest created by that agreement extends to property of the debtor, and rent therefrom, then the security interest extends to rents acquired by the

estate after commencement of the estate *to the extent provided by such security agreement and by applicable non-bankruptcy law* except to the extent that equities of the case dictate otherwise. 11 U.S.C. § 552(b). The parties in the case at bar do not dispute that a security agreement covering the Debtors' real property and rent therefrom was entered into prior to commencement of the case. The point of disagreement is whether applicable law affords FmHA a present interest in the rental proceeds.

North Dakota law controls the issue of security interest in rental proceeds. *See Butner v. United States,* 440 U.S. 48, 56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Matter of Village Properties, Ltd.,* 723 F.2d 441, 443 (5th Cir.1984). There is no dispute that under North Dakota mortgage law, FmHA as mortgagee, only holds a lien on the subject property and disputed rent proceeds, and does not hold legal title.

In most states, the mortgagee's right to rents is dependent upon his taking actual or constructive possession of the property by means of a foreclosure, the appointment of a receiver for his benefit, or some similar legal proceeding. *Butner v. United States,* 440 U.S. at 53, 99 S.Ct. at 917; *In re Engstrom,* 33 B.R. 369, 373 (Bankr.D.S. D.1983). The Supreme Court of North Dakota has declined to follow the majority position and has held that a mortgagee not in actual possession of mortgaged property, prior to foreclosure, is entitled to rents and profits pursuant to an assignment of rents. *Skinner v. American State Bank,* 189 N.W.2d 665, 670 (N.D.1971); *East Grand Forks Federal Savings and Loan Association v. Mueller,* 198 N.W.2d 124, 125, 128 (N.D.1972). Even though actual possession of the underlying property is not necessary in North Dakota to establish one's rights under an assignment of rents clause, the North Dakota Supreme Court appears to require some form of affirmative action by a creditor to fully establish that interest. In *Skinner,* the mortgagee's notice to the lessees of the lessor/debtor's default on payment and demand upon the lessees for payment of the rent to the mortgagee, was sufficient action to establish the mortgagee's right to subsequent rental proceeds. *Skinner,* 189 N.W.2d at 666, 670. Likewise, in *Mueller,* the mortgagee had taken no action to foreclose on the mortgaged property or to gain possession but relying on an assignment of rents clause simply notified the lessee that it was invoking its right to rents pursuant to the assignment of rents clause. *Mueller,* Id. at 126. The lower court in *Mueller* held that the failure of the mortgagee to foreclose on the mortgage or to gain possession of the premises precluded any rights which the mortgagee asserted they had to the rents. On appeal the North Dakota Supreme Court reversed the trial court, reaffirmed its holding in *Skinner,* and noted that an assignment of rents agreement is additional security which shall be enforced by the courts even prior to foreclosure. Other courts have also held that a party in possession of mortgaged property is entitled to rent proceeds until affirmative action is taken by the mortgagee. *In re Southern Gardens, Inc.,* 39 B.R. 671, 673 (Bankr.S.D.Ill.1982); *In re Colter, Inc.,* 46 B.R. 510, 512 (Bankr.D.Colo.1984) *aff'd* 47 B.R. 1008 (D.Colo.1985).

■ Under applicable North Dakota case law an assignment of rents clause may be enforced apart from the security in the property itself and in advance of foreclosure by affording either the lessee or mortgagor/lessor notification of an intention to invoke the assignment of rents clause. Although the North Dakota Supreme Court has not precisely defined the type of notice that may be sufficient in this regard it seems that any notice must be in the nature of a demand for payment or unequivocal language to the effect that a claim for rents is being made pursuant to an assignment of rents clause. It is not sufficient for a mortgagee to merely advise or remind the mortgagor of the assignment of rents clause. The mortgage itself is already of record and the rents have already been assigned ergo, there would be no purpose to merely reiterate the point. What is necessary is language which trig-

gers enforcement of the assignment of rents.

FmHA first of all asserts that it afforded the Debtors due demand for rents in April 1984 when it approved the Price lease on condition that the lease proceeds be turned over to it. This approval condition was it says, sufficient to meet the state law requirement and thereby avoid any possible conflict with section 362.

■ The 1984 lease to Price was done subject to and in full knowledge of FmHA's mortgage. The "Application for Partial Release, Subordination or Consent" specifies that the Debtor as lessor is making application for FmHA consent in accordance with the terms of existing security instruments and that the rent proceeds be applied to the Debtor/lessor's FmHA loan. The court deems this sufficient notice to invoke the assignment of rents clause and sufficient to give FmHA an immediate right to receive payment of the 1984 rents in the sum of $3,290.00 with no further demand being necessary.

With regard to the 1985 lease entered into by the Trustee post-petition, FmHA charges that section 362(a)(4) does not preclude a post-petition demand for rents pursuant to a previously recorded assignment of rents and when made, such demand affords it an immediate right to the same irrespective of the Trustee's section 544 avoiding powers. The Trustee, on the other hand, armed with section 544 asserts that FmHA's interest in the rents was not perfected prior to the petition and FmHA can not now claim an interest in the same superior to the Trustee's status as a hypothetical lien creditor. Placing reliance upon the case of *In re Gotta*, 47 B.R. 198 (Bankr.W.D.Wis.1985) the Trustee submits that the automatic stay prevents FmHA from making a demand for rents post-petition and accordingly, its claim for the 1985 rents as contained within its objection to the Trustee's February 1985 notice of intent to lease for the 1985 season is invalid. The facts in *Gotta* are, in at least one respect, significantly different from the facts at bar. The assignment of rents

clause in *Gotta* was, by its terms, to become effective *only* upon the mortgagee taking *possession* of the premises. *Id.* at 200. The automatic stay prevented the mortgagee from taking actual possession of the property, thus preventing the assignment of rents clause from becoming effective. FmHA's assignment of rents clause in the present instance contains no limitation; neither the specific language of the clause itself nor North Dakota case law requires actual possession as a prerequisite to enforcing the assignment of rents clause.

■ As of the date of the Chapter 7 bankruptcy petition the Trustee became accountable for all property of the estate; such property by virtue of section 541 would include the subject farmland now under lease. The Trustee by virtue of his authority had the power to lease the property consistent with appropriate business practices. Under section 541, however, the estate's interest in the property is limited to the same extent it was limited in the hands of the Debtor except as enhanced by the Trustee's avoiding powers. *See generally, In re N.S. Garrott & Sons*, 772 F.2d 462 (8th Cir.1985). Hence, the Trustee has a present right to post-petition rents subject to whatever pre-petition rights the mortgagee had, providing those rights can survive the Trustee's avoiding powers. The Trustee, invoking section 544 argues that as a hypothetical lien creditor he can assume the identity of a second mortgagee with an assignment of rents on the day of the bankruptcy petition, to the exclusion of FmHA's previously recorded but as of yet unenforced assignment of rents. This argument first of all assumes that section 544 cloaks a trustee with the status of a mortgagee. Section 544 of the Bankruptcy Code provides in part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

None of the foregoing provisions give to the Trustee the status of a mortgagee. A mortgage is a contractual lien not a judicial lien hence FmHA's pre-petition right to rents cannot be avoided on the strength of a hypothetical secured mortgagee. A trustee as hypothetical holder of a judicial lien under section 544(a)(1) can avoid a superior interest only if an actual creditor could have obtained a judicial lien against the property. Constructive notice imposed by state law will destroy the trustee's avoiding powers under section 544(a)(1). Section 47–19–19 of the North Dakota Century Code provides:

"The record of any instrument shall be notice of the contents of the instrument, as it appears of record, as to all persons".

Under North Dakota law, a person dealing with real property is charged with notice of properly recorded instruments affecting the title to property. *Northwestern Mutual Savings & Loan v. Hanson*, 72 N.D. 629, 10 N.W.2d 599, 602 (1943). Any person obtaining a judicial lien at the time of the bankruptcy filing would be deemed to have notice of FmHA's priority interest in rents. FmHA's prior recording however would not apprise a person of whether that interest had been enforced. FmHA's interest in the 1985 rents although not enforced at the time of the bankruptcy filing was no less perfected. FmHA under the mortgage provisions has no right to enforce the assignment of rents until a default occurs whereupon it may enforce its right by providing appropriate notice. Until notice is provided, irrespective of the fact of a default, the mortgagor would continue to have an interest in the rents. The mortgagor is free to do whatever he wishes with the rents until receipt of the mortgagee's notice of enforcement including making the rents subject to the interests of a judicial lien creditor. A judicial lien creditor, however, under state law would have the right to attach the rents only as they came due and payable. The judicial lien could not stand in a permanent priority position against the previously recorded mortgagee's interest. A mortgagee, armed with its previously perfected assignment of rents, can at any time step in and enforce its lien against any rents not yet paid. *See Consolidated Capital Income Trusts v. Colter, Inc.*, 47 B.R. 1008 (D.Colo.1985).

Although the North Dakota Supreme Court has not addressed this issue it is the opinion of this court that a judicial lien creditor or an inferior mortgagee who has asserted its rights to rental proceeds is entitled to levy and execute only on the proceeds for the current rental period.

Section 546(b) of the Bankruptcy Code provides:

The rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property

has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

11 U.S.C. § 546(b). In regards to the instant problem, section 546(b) means simply that FmHA may enforce its interest in the 1985 rents if its previously recorded mortgage containing an assignment of rents clause could be effective against a judicial lien creditor. The automatic stay does not prevent a mortgagee from giving notice in order to perfect such interest and a demand made to a trustee in bankruptcy, as contrasted to a mortgagee or lessee, for turnover of rents has been held by many courts to be sufficient to establish a mortgagee's rights to rental proceeds. *Mortgage Loan Co. v. Livingston*, 45 F.2d 28, 32 (8th Cir.1930); *Matter of Village Properties, Ltd.*, 723 F.2d at 441; *Matter of L.G. Edwards Farm, Inc.*, 30 B.R. 842, 845 (Bankr.E.D.Mo.1983). FmHA's Objection to the Trustee's notice of intent to lease, by itself, is sufficient notice of its intent to enforce the assignment of rents clause because the objection states that if the property is leases, FmHA is by virtue of the clause, entitled to the rents. Clearly, FmHA by its March 13, 1985 objection was asserting an immediate right to payment should the lease go forward. This rationale also advances the United States Supreme Court's decision in *Butner v. United States* that "the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued". *Butner v. United States*, 440 U.S. at 56, 99 S.Ct. at 918. As noted by the Supreme Court in *Butner*, property interests in rental proceeds should be determined under state law to prevent "a windfall merely by reason of the happenstance of bankruptcy". *Id.*

2.

The rents derived in consequence of the 1985 lease with Price do, by virtue of

FmHA's security interest in rents and its enforcement of that interest, constitute cash collateral and may be used by the estate only if FmHA is afforded adequate protection for its interest consistent with section 363(e). Accordingly, and for the reasons stated it is ORDERED that the 1985 rent proceeds now in escrow remain in a cash collateral account until FmHA is afforded adequate protection for their use by the estate; in the alternative the Trustee may abandon the proceeds to FmHA.

JUDGMENT MAY BE ENTERED ACCORDINGLY.